**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ROBIN SUTTON,

              Plaintiff,

      v.

JOSE R. CARO et al.,

              Defendants.

Case No. 1:25-CV-03923

Honorable Sunil R. Harjani

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Robin Sutton alleges that she was sitting in her parked gray car, while her son slept in the back seat, when a police car stopped next to her. Though she did not match the description of the suspect—a man in a red hoodie in a black car—the officers approached her and asked if she had seen anyone who did. She responded no and rolled up her window. But that did not end the encounter. The officers asked her to roll down her window, ordered her to exit the car, and, when she did not comply with these commands, forcibly removed her from the car. As she was handcuffed, the officers searched her bag and found a gun, leading to her arrest. Arguing that the officers lacked reasonable suspicion and probable cause to search and seize her, her son, and her belongings, Plaintiff asserts Fourth Amendment claims and state law claims against the officers[1] and the City of Chicago.

Defendants argue that body-worn camera footage and Plaintiff's criminal file discredit Plaintiff's allegations and establish reasonable suspicion or probable cause for their conduct. On that basis, they move to dismiss the Complaint. At the motion-to-dismiss stage, the Court's role is

---

[1] The Complaint names Officers Jose R. Caro, Carlos X. Rico, Daniela Carriedo, Layne Muench, D. Gonzalez (#9147), and M. Coyle (#9717) as Defendants.

to ensure that Plaintiff has stated a plausible claim for relief while assuming the truth of her allegations. Through that lens, Plaintiff sufficiently pled her unlawful detention and illegal search federal claims, and her state law claims of false imprisonment and battery until the time when Defendants discovered the gun. However, the Court finds that there is clear probable cause for her arrest after discovery of the gun, which warrants partial dismissal of her detention and state law claims and complete dismissal of her claim of unlawful seizure of her son. Additionally, her allegations are insufficient to plead excessive force. For these reasons, the motion [17] is granted in part and denied in part.

## Background

The Complaint alleges the following set of events, which are taken as true on a motion to dismiss. On November 10, 2024, Defendants-officers responded to a call of "a male wearing a red hoodie as seen with a gun in his hoodie pocket while sitting in a black Nissan sedan w/3 other occupants outside." [1] ¶ 37. Plaintiff, a woman, sat parked in front of 5932 Elizabeth Street in Chicago, Illinois, in a gray Nissan with her two-year-old son when Defendants arrived. *Id.* ¶¶ 7– 8, 10, 40, 43. She was not wearing a red hoodie. *Id.* ¶ 39. No other person was in the vicinity. *Id.* ¶¶ 9, 44. Officer Caro approached Plaintiff at her driver's side window and said, "[w]e're looking for someone – did you see someone come out here with a red hood[ie] somewhere?" *Id.* ¶ 11–13. Plaintiff said no and raised her window. *Id.* ¶ 14. Another officer opened her door, but Plaintiff pulled it shut. *Id.* ¶¶ 15–16. Officer Caro ordered her to lower the window and told another officer that "just one person" was in the car. *Id.* ¶¶ 17–18. Plaintiff complied, but Officer Caro asked her to further lower the window, and then to step out of the car. *Id.* ¶¶ 19–21. When she refused, Officer Caro opened the door and attempted to pull her out of the car. *Id.* ¶¶ 24–26. Plaintiff argued that her son was in the car, but Officer Caro responded that her son was sleeping and insisted that

Plaintiff exit the car, which another officer echoed. *Id.* ¶¶ 27–30. Officer Caro also asked her what she had in the bag across her chest, and he then reached for it. *Id.* ¶ 29. Plaintiff requested a supervisor before the officers forced her out of the car and handcuffed her hands behind her back. *Id.* ¶¶ 32–33. While other officers handcuffed Plaintiff, Officers Caro and Rico grabbed her bag, searched it, and removed a gun. *Id.* ¶¶ 34–35. After Plaintiff was placed in custody, Officer Rico drove her car, with her son inside, to the police station without Plaintiff's consent. *Id.* ¶¶ 48–49.

Alleging police misconduct, Plaintiff brings four federal claims for violations of her Fourth Amendment rights, and state law claims for false imprisonment and battery against all officers. She has also brought a state law indemnification claim against the City of Chicago. Defendants move to dismiss the six claims brought against the officers under Federal Rule of Civil Procedure 12(b)(6), arguing that the officers had reasonable suspicion or probable cause to detain and search Plaintiff, and that the officers are also immune from suit.

## Discussion

On a motion to dismiss, the well-pleaded facts in the complaint are accepted as true, and reasonable inferences are drawn in the plaintiff's favor. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 556 (2007)). "'Under the federal rules' notice pleading standard, a complaint must contain only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)).

## I. Body-Worn Camera Footage and Police Reports

With their motion, Defendants submitted video exhibits of three of the officers' body-worn camera footage, which they assert contradicts Plaintiff's allegations and warrants dismissal. In deciding a Rule 12(b)(6) motion, a court may consider video footage attached to the motion if it is also "attached to the complaint" or is "referenced in the pleading [and] central to the claim." *Esco*,

107 F.4th at 678. By considering a document that is referenced in the pleading and central to the claim, a court guards against a plaintiff evading dismissal under Rule 12(b)(6) "simply by failing to attach to his complaint a document that proved that his claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2004). At the same time, the reference requirement ensures that each party has notice of the opposing party's supportive evidence before the court uses it to rule on a claim. *Id.* (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")). The Seventh Circuit has indicated that a document submitted by the defendant that the plaintiff did not attach to the complaint but "has at least quoted from" is within the scope of appropriate materials at the motion-to-dismiss stage. *Id.* at 739.

An analogous case to ours is *Haligas v. City of Chicago*, 609 F. Supp. 3d 619 (N.D. Ill. 2022), in which the complaint only made a cursory reference to body-worn camera footage submitted with the defendants' motion to dismiss. *Id.* at 624. The district court still found that the footage was incorporated by reference because some allegations asserted facts the plaintiff knew only from viewing the footage, such as her description of the defendants-officers' encounter with her son's father, and were central to the claims relying upon those allegations. *Id.* Though Plaintiff did not attach the footage to her Complaint or explicitly cite it, her allegations refer to it through direct quotations of the officers. Plaintiff alleges that Officer Caro asked her, "We're looking for someone – did you see someone come out here with a red hood[ie] somewhere?" [1] ¶ 13; [17-1] at 3:30–3:45. Additionally, Plaintiff alleges that her son began crying when Officer Rico took him to the station, and Officer Rico told him, "It's okay. Relax, your mom's here." [1] ¶ 50; [17-2] at 16:20–16:32. Plaintiff was not present for that interaction, but the statement is evident from

Officer Rico's footage. Finally, and perhaps most importantly, Plaintiff does not object to the Court's consideration of the footage and references it in her brief. *See, e.g.*, *Walker v. Gatsios*, 2024 WL 4476118, at *1 (N.D. Ill. Oct. 11, 2024) (considering body-worn camera footage where plaintiff did not object and footage provided a complete picture of the arrest). Given all of this, the Court finds it entirely appropriate to consider the footage to ensure that Plaintiff's claims are plausible. Nevertheless, when considering the video footage, the Court will follow the Supreme Court's holding in *Scott v. Harris*, 550 U.S. 372 (2007), that a plaintiff's allegations cannot be accepted where a video "utterly discredit[s]" them such that no reasonable jury could have believed the allegations. *Haligas*, 609 F. Supp. 3d at 624 (quoting *Scott*, 550 U.S. at 380); *Hyung Seok Koh v. Graf*, 2013 WL 5348326, at *9 (N.D. Ill. Sept. 24, 2013) (same); *see also Esco*, 107 F.4th at 679 (confirming that the principle from *Scott* applies at the motion-to-dismiss stage). In considering whether Plaintiff states a plausible claim, the Court will consider the footage in the light most favorable to her. *Esco*, 107 F.4th at 679.

Along with the footage, Defendants attached to their motion Plaintiff's criminal file as of November 14, 2024, which contains her arrest and incident reports. Like the footage, Plaintiff does not cite the reports in her Complaint, but her allegations quote the arrest report for the reported call of "a male wearing a red hoodie as seen with a gun in his hoodie pocket while sitting in a black Nissan sedan w/3 other occupants outside" and Defendants' description of her car as a "dark Nissan Sentra." [1] ¶¶ 37, 41; [17-4] at 4. For the same reasons, these reports are also incorporated into the Complaint by reference. *Haligas*, 609 F. Supp. 3d at 624; *Hyung Seok Koh*, 2013 WL 5348326, at *9–10. Similar to the camera footage, Plaintiff does not object to the consideration of these reports, and she also references the reports in her response brief. Because police reports can be adversarial in nature and "not presumed to be categorically reliable," *United States v. Jordan*, 742

F.3d 276, 280 (7th Cir. 2014), the Court will not consider the reports for the truth of the events described. Rather, the Court considers the quoted arrest report only to the extent that, when viewed in the light most favorable to Plaintiff, it utterly discredits her allegations. *Esco*, 107 F.4th at 679.

## II.    Plaintiff's Detention (Count I)

Defendants argue that the officers had reasonable suspicion to stop Plaintiff based on the police call that they were investigating. According to Defendants, the officers responded quickly to the call about a person with a gun seated inside a black Nissan sedan and observed Plaintiff seated in a Nissan sedan that was gray with black trim and parked in front of the address provided. Defendants conclude that, although the scene did not perfectly match the description, there was substantial corroboration that made the call reliable and supports reasonable suspicion.

"It is well established that a police officer can stop and detain briefly a person for investigative purposes when the officer has a reasonable suspicion, supported by articulable facts, that criminal activity is afoot." *United States v. Pace*, 48 F.4th 741, 749 (7th Cir. 2022) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). Reasonable suspicion exists "only when an officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a stop. *Id.* "When an anonymous caller provides a tip to the police, the tip can serve as the basis for reasonable suspicion if it is 'reliable in its assertion of illegality, not just in its tendency to identify a determinate person.'" *United States v. Swinney*, 28 F.4th 864, 866 (7th Cir. 2022) (quoting *Florida v. J.L.*, 529 U.S. 266, 272 (2000)). Under *Swinney*, three factors make an anonymous tip reliable enough to create reasonable suspicion: "the tipster (1) asserts eyewitness knowledge of the reported event; (2) reports contemporaneously with the event; and (3) uses the 911 emergency system, which permits call tracing." *Id.* at 867 (citation omitted); *Navarette v. California*, 572 U.S. 393, 398–401 (2014).

6

In her Complaint, Plaintiff alleges that the officers seized and searched her in response to an anonymous call and that she did not reasonably match the call's description. While, on its face, this appears to be a plausible claim, the question for the Court is whether the camera footage and arrest report clearly portray circumstances that support reasonable suspicion and thus definitively discredit Plaintiff's allegations. Looking at the *Swinney* factors, the second and third factors are quickly disposed of because they are unknown from the current record. The Complaint and arrest report say nothing about the time within which the officers responded to the call. The footage does not show them receiving the call, the time they took to arrive on scene after receiving it, or any commentary on the response time. The footage and arrest report also do not reveal that the call was made using the 911 emergency system and provide no details about the call or the caller. Viewing these materials in the light most favorable to Plaintiff, these reliability factors are not present.

For the first factor, a tipster's knowledge is more reliable when a reasonable officer can tell that the tipster saw concealed criminal activity firsthand. *J.L.*, 529 at 272. As demonstrated in the Supreme Court's analysis in *J.L.*, such knowledge is not evident from only a description of "a subject's readily observable location and appearance" or the mere allegation of an illegal gun. *Id.* In *J.L.*, the police officers lacked reasonable suspicion for an investigatory stop when they acted on an anonymous tip of an individual with a gun who was standing at a bus stop and wearing a plaid shirt. *Id.* at 271. These details neither explained how the tipster knew about the gun nor supplied any basis for believing he had inside information about the subject. *Id.* at 272. Additionally, the Court rejected the petitioner's argument that the allegation of an illegal gun was sufficient for reasonable suspicion because it would too broadly justify subjecting people to police searches. *Id.* Later cases have distinguished *J.L.*, where the reported details indicated that the

7

caller had seen the gun and thus had knowledge of a concealed criminal activity. For example, in *Swinney*, the caller reported witnessing a man pull a gun out of his pocket before walking into a liquor store with a black skullcap and fur coat. 28 F.4th at 867. That gave reasonable suspicion for the officer to stop a man matching the description in the reported liquor store. *Id.* at 868. And in *United States v. Adair*, 925 F.3d 931 (7th Cir. 2019), the caller's description of a man with a gun in his front pocket, along with other details, supported reasonable suspicion of the man that the officer ultimately observed having a large bulge in his front pocket. *Id.* at 936.

Defendants argue that the first factor weighs in their favor because the caller provided a specific address, car make and color, and location of the gun.[2] But, as recognized by the Supreme Court in *J.L.*, that alone is not enough. The identification of a "black Nissan sedan" is also at odds with the Complaint and arrest report stating that Plaintiff's car is gray. Although the caller alleged that they saw a gun in a red hoodie pocket, Plaintiff was not wearing a hoodie. Plaintiff was wearing a black jacket with a bag across her chest, not near her waist or any pockets. Further, the footage does not demonstrate that the officers were suspicious of her. Indeed, the officers asked Plaintiff if she saw a man wearing a red hoodie, indicating that they did not suspect her of being the culprit. These circumstances do not permit the Court to find Plaintiff's allegations are definitively discredited by the police call.

Defendants ask the Court to consider Plaintiff's conduct and behavior during the encounter. They argue that because she initially raised her window after answering Officer Caro, would not lower it further upon request, refused to exit the car, and turned away when Officer Caro reached for her bag, they had reason to suspect that she possessed a gun. It is certainly appropriate to

---

[2] The address is not alleged in the Complaint as part of the dispatcher's description but is stated in the arrest report and discussed by the officers in the camera footage.

consider the behavior and characteristics of an individual when determining whether the totality of the circumstances establishes reasonable suspicion. *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006). Even so, Defendants provide no authority to demonstrate that these actions constitute suspicious activity. Nor are these actions devoid of other plausible explanations. For example, when Officer Caro approached Plaintiff's window, he shined a flashlight in her face, to which she squinted. She also had a sleeping child in the backseat, who could be woken up by the light and noise. Plaintiff was also under no obligation to further speak to the officers after responding to their initial question or interact with them at that point, as she was sitting in her parked car and was not detained. Viewing the facts in the light most favorable to Plaintiff and considering that she did not exhibit actions that blatantly demonstrate suspicious behavior, the Court finds that the current record does not mandate a finding of reasonable suspicion at this stage of the proceedings.[3]

Aside from arguing reasonable suspicion, Defendants contend that they had probable cause to arrest Plaintiff. First, when Plaintiff refused to comply with the orders to exit her car, the officers claim she obstructed them as peace officers. Second, when they found Plaintiff's gun, she allegedly possessed a concealed, loaded firearm in public in violation of Illinois law. Like reasonable suspicion, probable cause depends on the totality of the facts and circumstances known to the officer at the time of the arrest. *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013). "Federal law asks only whether the officers had probable cause to believe that the predicate

---

[3] Defendants also claim that Plaintiff's outburst that the officers were looking for a man and that she was a woman also provides reasonable suspicion, as none of the officers had identified the suspect as a man at that point. But, accepting that as fact requires the Court to conclude that there was no other plausible way for Plaintiff to obtain that information, which cannot be done on a motion to dismiss on this limited record and with a fair amount of background chatter by the officers during this incident.

offense, as the state has defined it, has been committed." *Williams v. Jaglowski*, 269 F.3d 778, 782 (7th Cir. 2001). "[T]he court steps into the shoes of a reasonable person in the position of the officer" to evaluate whether it was objectively reasonable to believe that the arrestee had committed, was committing, or was about to commit a crime. *Padula v. Leimbach*, 656 F.3d 595, 601 (7th Cir. 2011) (citation omitted); *Abbott*, 705 F.3d at 714. "[I]f there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the court must leave the determination for the jury. *Padula*, 656 F.3d at 601.

Taking Defendants' first argument for probable cause, Illinois law defines obstruction of a police officer as "[a] person who knowingly resists arrest, or obstructs the performance by one known to the person to be a peace officer . . . of any authorized act within his official capacity." 720 ILCS 5/31-1(a). "[M]ere argument with a policeman about the validity of an arrest or other police action" does not fit within this definition—there must be some physical act or exertion, or refrainment from action. *People v. Synnott*, 811 N.E.2d 236, 238–40 (Ill. App. Ct. 2004) (quoting *People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968)); *see Abbott*, 705 F.3d at 721–23. Whether conduct interposes an obstacle that impedes or hinders the officer in the performance of his authorized duties "is for the trier of fact, based upon the facts and circumstances of each case." *Pryor v. Corrigan*, 124 F.4th 475, 506 (7th Cir. 2024) (Rovner, J., concurring) (emphasis omitted) (quoting *People v. Baskerville*, 963 N.E.2d 898, 905 (Ill. 2012)).

Relying on *Synnott*, Defendants claim that Plaintiff's failure to exit the vehicle gave them probable cause. In *Synnott*, the police officer stopped a driver for a traffic violation when he noticed an indication of intoxication. 811 N.E.2d at 237. During the stop, the officer requested several times that the driver step out of the car. *Id.* When the driver still refused and the officer attempted to pull him out of the car, the driver briefly gripped his steering wheel before letting go

10

and exiting. *Id.* at 237–38. The driver was charged with and convicted of obstructing a peace officer because he knowingly obstructed the officer's "authorized act within his official capacity, being the investigation of a potential intoxicated driver." *Id.*

Plaintiff alleges that Officer Caro ordered her to exit the car under threat of arrest and forced her car door open, and that she resisted him. [1] ¶¶ 21–26. Her allegations do not contradict the footage or Defendants' recitation of events. But these events do not mean she obstructed the officers. The key difference at this stage from the resistance in *Synnott* is that the officers were not acting pursuant to an "authorized act" under the statute. The officer in *Synnott* was conducting a lawful traffic stop when the driver resisted the officer's orders. 811 N.E.2d at 237. Here, the officers questioned Plaintiff to investigate a call about a man in a red hoodie with a gun, not a woman in a black jacket with a child. Thus, this case is more similar to *Cuevas v. City of Aurora*, 2025 WL 1899513 (N.D. Ill. July 9, 2025). In *Cuevas*, a police officer, responding to a reported gun threat in a store, drew his weapon on a man in the store, ordered him to exit, pulled him to the ground, and arrested him. *Id.* at *2–3. When the man sued the officer and city for false arrest, they argued that the officer had reasonable suspicion to stop the man and probable cause to arrest him for obstruction because he resisted arrest. *Id.* at *3–4. The district court denied their motion for summary judgment because the evidence did not establish reasonable circumstances to suspect the man was the subject of the police call, so the officer was not engaged in an authorized act that could be obstructed. *Id.* at *4. The same is true here, where the limited record does not establish that the officers were engaging in lawful acts in detaining a woman with a black jacket in a gray car, when they were actually searching for a man with a red hoodie in a black car. Without yet determining whether the officers were carrying out authorized acts, the Court cannot determine whether probable cause for obstruction existed.

11

Next, Defendants argue that they had probable cause to arrest Plaintiff for unlawful possession of a firearm once they discovered a gun in Plaintiff's bag. Illinois law prohibits a person from knowingly carrying or possessing in public a firearm without a valid concealed carry license under the Firearm Concealed Carry Act. 720 ILCS 5/24-1(a)(10)(iv). Gun possession alone does not establish probable cause. *See United States v. Chavez*, 625 F. Supp. 3d 760, 773 (N.D. Ill. 2022). However, gun possession paired with other conduct can give rise to probable cause. *Id.* Probable cause "exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021). For example, in *Young*, the Seventh Circuit found probable cause to arrest a driver for owning a gun as an "armed habitual criminal" after the officer spotted a gun next to him in the car and learned from questioning that the driver was a convicted felon, even though the driver was later acquitted of firearm possession. *Id.* at 643–45 (citing 720 ILCS 5/24-1.7).

There is no dispute that the officers found a gun in Plaintiff's bag or requested identification after finding the gun. As the camera footage shows, Officer Rico searched Plaintiff's bag for her concealed carry license after he pulled out the gun. The officers repeatedly asked Plaintiff if she had a license, but she answered only that she was in the military and that the gun was her service weapon.[4] On the footage, Officer Rico is observed pulling her driver's license from her bag and retrieving information from the police car system, which only returned a registered firearm's owner identification, not a concealed carry license. Under these uncontested circumstances, there was probable cause for the officers to believe that Plaintiff was committing a crime.

---

[4] Neither party addresses whether Plaintiff was actually in the military or had a concealed carry license.

Plaintiff argues that the search was unlawful and prevents the officers from having probable cause. However, the propriety of the search is a separate Fourth Amendment claim analyzed apart from Plaintiff's claim for unlawful arrest. The exclusionary rule does not apply in Section 1983 cases, so even if the search was unlawful, the subsequent arrest upon discovery of the firearm is still supported by probable cause. *Martin v. Marinez*, 934 F.3d 594, 598–99 (7th Cir. 2019). As a result, Plaintiff cannot state a plausible unlawful detention claim.

### III. Search of Plaintiff's Bag (Count II)

Echoing the same arguments, Defendants contend that the officers had reasonable suspicion that Plaintiff possessed a gun, so they were justified in searching her bag.[5] Officers may conduct a limited search of the outer clothing of a person being investigated as armed and dangerous, including a pat-down of their effects, such as a bag. *United States v. Leo*, 792 F.3d 742, 749 (7th Cir. 2015) (citing *Terry*, 392 U.S. at 30); *Arizona v. Johnson*, 555 U.S. 323, 330 (2009). In support of this purported permissive pat-down search, Defendants cite *United States v. Ford*, 872 F.3d 412 (7th Cir. 2017), in which an officer in Moline, Illinois pulled over a vehicle with three men for a traffic violation. *Id.* at 414. The officer noticed open beer bottles in the car, indicating they had been drinking and "might do something unpredictable, unwise, and dangerous." *Id.* at 414, 416. When he ran the license plate and the men's driver's licenses, the officer recognized their names from an earlier police advisory report of a group who may be planning a revenge shooting, and learned that they had criminal histories. *Id.* at 413–14. These circumstances gave the officer "objectively reasonable suspicion that the [men] might be armed"

---

[5] Alternatively, Defendants assert that Plaintiff's bag would have been searched as part of a custodial search because they had probable cause to arrest Plaintiff for obstruction. As discussed, the current record does not establish probable cause for obstruction, so the Court rejects this argument for the same reasons.

and dangerous. *Id.* at 415–16. Thus, his search of their persons, which revealed a gun, was justified. *Id.*

While Plaintiff was instructed to exit a car and had a gun, the similarities with *Ford* end there. Unlike the officers in *Ford*, from the current record, the Court cannot conclude that the officers were conducting a lawful traffic stop. Rather, they were investigating a call about a man possessing a gun, but as explained above, they have not established reasonable suspicion for their actions against Plaintiff. Indeed, the footage shows the officers stating that Plaintiff was a woman with no one else in the car, which, viewed in the most favorable light, shows them discounting Plaintiff as the suspected person. Also, viewing the facts in Plaintiff's favor, the car was gray, not black, and there were not three other individuals around the car, as the caller had described. So, at this stage of the proceedings, since there was no reasonable suspicion for her detention on the current record, the Court cannot find that there was no reasonable suspicion to search her bag for a weapon.

Moreover, Officers Caro and Rico separated Plaintiff's bag from her person before searching it. In *Leo*, the Seventh Circuit found that it "exceeded the bounds of *Terry*" when officers searched a man's backpack after it was separated from him and he was placed in handcuffs. 792 F.3d at 749. It was not reasonable to believe that the man could have gained "immediate control" of the gun in his backpack. *Id.* at 750; *see also United States v. Tejada*, 524 F.3d 809, 811–12 (7th Cir. 2008) (it was "inconceivable" that a defendant who was handcuffed, face down on the floor, and surrounded by police officers could have opened a travel bag to reach for a weapon); *United States v. Perkins*, 2022 WL 326965, at *5 (N.D. Ill. Feb. 3, 2022) (same). Here, Plaintiff alleges that while she was being handcuffed by other officers, Officers Caro and Rico grabbed her bag and placed it on the rear of her car, then proceeded to search it. [1] ¶¶ 34–35. This is confirmed, not

14

contradicted, by the footage. Because it is plausible that the officers lacked a reasonable belief that they were in danger after separating Plaintiff from her bag and thus exceeded the scope of a permissible search, the footage does not definitively establish reasonable suspicion to warrant dismissal of Plaintiff's plausible unlawful search claim.

## IV.     Seizure of Plaintiff's Son (Count III)

Coinciding with Plaintiff's claim of unlawful detention is her claim that the officers unlawfully seized her son by driving him in Plaintiff's car to the police station after she was arrested. Courts have found it reasonable for police officers to briefly seize a child when conducting a reasonable seizure of their parents. *See, e.g.*, *Mitchell v. Smith* , 2025 WL 2675106, at *12 (E.D. Wis. Sept. 18, 2025) ("Detaining [minor plaintiff] incident to her mother's seizure— and releasing her once the plaintiff was deemed free to leave—was reasonable under the circumstances."); *Pittman v. City of New York*, 2014 WL 7399308, at *4 (E.D.N.Y. Dec. 30, 2014) (finding reasonable the temporary removal of a minor from the car during a traffic stop); *Guerrero v. Deane*, 750 F. Supp. 2d 631, 654 (E.D. Va. 2010) (same), *aff'd sub nom.*, *Guerrero v. Moore*, 442 F. App'x 57 (4th Cir. 2011). Pertinently, a court in this district has expressed that taking a child to the police station with the child's parents is "reasonable and makes perfect sense" when the arrest of the child's parents is also reasonable. *A.G. v. City of Park Ridge*, 198 F. Supp. 3d 856, 861 & n.5 (N.D. Ill. 2016).

Here, the Court has partially dismissed Plaintiff's claim of unlawful detention as to conduct occurring after the gun was found because Defendants had probable cause to arrest at that time. Because the seizure of Plaintiff was reasonable at that point, the alleged seizure of her son after was also reasonable. Because the seizure of Plaintiff's son only occurred after there was probable cause to arrest Plaintiff, the seizure was lawful and cannot support her claim.

## V.    Excessive Force (Count IV)

Rounding out the federal claims, Defendants argue that the officers only used necessary force, and not excessive force, during the incident.  "An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force not justified under the relevant circumstances." *County of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2025).  "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  The totality of the circumstances must be considered because the inquiry is fact-specific. *Barnes v. Felix*, 605 U.S. 73, 80 (2025).  Though the reasonableness standard is the same as that for other Fourth Amendment claims, the analysis for an excessive force claim must be conducted separately to avoid conflating claims. *Mendez*, 581 U.S. at 428.  Implicit in an officer's authority to conduct a stop is the authority "to require the subject to submit to the stop, and to use reasonable force to make him submit." *United States v. Lopez*, 907 F.3d 472, 479 (7th Cir. 2018); *Graham*, 490 U.S. at 396.  Merely placing an individual in handcuffs as part of detention is not unreasonable. *Tibbs v. City of Chicago*, 469 F.3d 661, 665–66 (7th Cir. 2006); *Townsel v. Jamerson*, 240 F. Supp. 3d 894, 903 (N.D. Ill. 2017).  Additional circumstances are necessary to show that the specific use of handcuffs was unreasonable. *See, e.g.*, *Payne v. Pauley*, 337 F.3d 767, 775, 780 (7th Cir. 2003) (handcuffing for a minor, non-violent crime that was tight enough to require later surgery was unreasonable).  Alternatively, a plaintiff must allege that the officers used other types of force that were not necessary to make an arrest or stop. *See, e.g.*, *Herzog v. Village of Winnetka*, 309 F.3d 1041, 1043–44 (7th Cir. 2002) (allowing jury trial on excessive force claim where officers shoved plaintiff to the ground when she was not resisting, cracked her tooth by forcing a breathalyzer in her mouth, put handcuffs on too tight, and subjected her to blood and urine test at hospital after she passed all field sobriety tests).

16

Plaintiff conflates her excessive force claim with her unlawful detention claim because it rests entirely on her position that Defendants were using force to carry out an unlawful stop and arrest. She does not allege that the handcuffs were put on too tightly or that the officers used force beyond what was necessary to get her out of the vehicle and place her in handcuffs. Nor does she argue that the footage shows anything different. The Complaint only alleges that the officers forced her door open, pulled her out of the car, and handcuffed her hands behind her back. [1] ¶¶ 24–26, 33. That does not allege force beyond what was reasonably necessary to carry out her detention. Because her claim is merely an extension of a different Fourth Amendment claim without allegations that allow it to stand on its own, Plaintiff fails to state a claim for excessive force. *Mendez*, 581 U.S. at 428.

## VI.   Qualified Immunity for Pre-Arrest Detention and Search of Plaintiff's Bag

Based on the above, the only remaining federal claims are Plaintiff's detention before the discovery of the firearm and the search of her bag, and Defendants contend they are immune for their conduct. Qualified immunity is an affirmative defense that is not generally a ground for dismissal under Rule 12(b)(6) because a plaintiff "need only state a claim to relief that is plausible on its face," and the defense "so closely depends on the facts of the case." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (cleaned up); *Twombly*, 550 U.S. at 570. However, if the complaint's well-pleaded allegations, taken as true, do not "state a claim of violation of clearly established law," a court may dismiss under Rule 12(b)(6) based on qualified immunity. *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). The plaintiff may fend off the defense by showing that (1) she "adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have

known his conduct was unlawful." *Id.* at 592 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Whether the officers are entitled to qualified immunity turns on whether they had reasonable suspicion. *Taylor v. Schwarzhuber*, 132 F.4th 480, 487–89 (7th Cir. 2025). Having found that Plaintiff plausibly alleges facts that may show that the officers lacked reasonable suspicion to seize her before discovering the gun and to search her bag in violation of her Fourth Amendment rights, the Court proceeds to the second element of whether the rights allegedly violated were clearly established at the time the officers acted. *Hanson*, 967 F.3d at 592. To show that a law was clearly established, a plaintiff must point to a "closely analogous" case finding the type of conduct alleged to be unlawful. *Reed*, 906 F.3d at 547. That way, it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (citation omitted).

Plaintiff cites *Florida v. J.L.*, 529 U.S. 266, and *United States v. Swinney*, 28 F.4th 864, which put police officers on notice of the factors for an anonymous call to be reliable. More specifically, *J.L.* clearly establishes conditions under which an anonymous call is insufficient for reasonable suspicion. There, a tip was made by an unknown caller who only alleged that a person possessed a gun, with scant description of the person. *J.L.*, 529 U.S. at 270–71. *J.L.*'s facts are closely analogous to the anonymous call in this case, which described only the clothes and location of a person allegedly possessing a gun, without any information that would allow Defendants to test the caller's credibility or reasonably believe that Plaintiff was acting criminally. As taught by *J.L.*, the allegation of gun possession on its own is insufficient for reasonable suspicion. *Id.* at 272. Going further, Plaintiff also cites *United States v. Watson*, 900 F.3d 892 (7th Cir. 2018), which notifies officers that they may lack reasonable suspicion if they arrive on a scene that does not

match the description of a 911 call and does not demonstrate an emergency or criminal activity. In *Watson*, an unidentified caller reported that "boys" were "playing with guns and stuff" near a gray and greenish Charger in a parking lot, but the officer only witnessed four men sitting in a car. *Id.* at 893–94. Although they denied having weapons when questioned, the officer ordered them out of the car and frisked them anyway, finding a gun on one of the men. *Id.* The Seventh Circuit held that the officer lacked reasonable suspicion because the anonymous call was unreliable, and the mere allegation of a gun without emergency or criminal activity was insufficient. *Id.* at 895–98. Even if the officers had been worried about an emergency, "that worry should have dissipated when [the first officer] arrived at the scene" because what he saw did not match the caller's report—"no one was playing with guns in the parking lot." *Id.* at 896. *Watson* is materially similar to this case, where the officers responded to a call about a man with a gun in certain clothes within a group of people near a certain car. When Officers Caro and Rico arrived on the scene, they only saw Plaintiff, who did not match the description. These cases, which reject reasonable suspicion in factually analogous circumstances, prevent application of qualified immunity at this time.

## VII.   State Law Claims (Counts V & VI)

Finally, Plaintiff asserts claims for false imprisonment and battery against the officers. They invoke immunity under the Illinois Tort Immunity Act. The Act protects an officer from liability for their "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct," which means "an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/2-202; 745 ILCS 10/1-210; *Chelios v. Heavener*, 520 F.3d 678, 692–93 (7th Cir. 2008). "As a general rule, 'whether conduct is willful and wanton is a factual question." *Grimes v. County of Cook*, 455 F. Supp. 3d 630, 643 (N.D. Ill. 2020) (quoting *Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003)). Accordingly, tort immunity

19

is an affirmative defense that a plaintiff generally need not overcome at the pleading stage. *Doe I v. Bd. of Educ. of City of Chi.*, 364 F. Supp. 3d 849, 862–63 (N.D. Ill. 2019) (citing *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003)); *see also Prokop v. Hileman*, 588 F. Supp. 3d 825, 844–45 (N.D. Ill. 2022) (collecting cases).

Battery is the unauthorized touching of another person that "offends a reasonable sense of personal dignity." *Chelios*, 520 F.3d at 692 (quoting *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995)). False imprisonment is the "unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Poris v. Lake Holiday Prop. Owners Ass'n*, 983 N.E.2d 993, 1007 (Ill. 2013). Both depend on the reasonableness of the police officers' actions. *See Hawkins v. Mitchell*, 756 F.3d 983, 994 (7th Cir. 2014); *Luss v. Village of Forest Park*, 878 N.E.2d 1193, 1206 (Ill. App. Ct. 2007). Probable cause existed after Defendants discovered the gun in Plaintiff's bag and no concealed carry license, so it was reasonable to arrest her for unlawful firearm possession. "The right to make an arrest necessarily carries with it the right to some degree of physical coercion to effect it." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304 (7th Cir. 2011); *Graham*, 490 U.S. at 396. It follows that the officers' physical contact to effectuate Plaintiff's arrest was reasonable. However, the Complaint alleges reckless indifference in the officers' actions before discovering the gun as well, and the footage does not utterly discredit this allegation at this stage. Therefore, the claims are dismissed only to the extent that they impose liability for conduct after the officers discovered the firearm.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [17] is granted in part on Counts I, V, and VI for the officers' conduct after discovering the firearm, and granted in full on Counts III and IV, all with prejudice, as no further amendments can save these claims. Defendants'

motion [17] is otherwise denied.  On the claims that survive, nothing in this opinion should be taken as a decision on the merits of those claims.  Rather, the Court has only determined that Plaintiff has stated plausible claims in her Complaint, and even when viewing the video footage, it does not conclusively demonstrate their implausibility.

**SO ORDERED.**

Dated: December 18, 2025

_____
Sunil R. Harjani
United States District Judge